# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SHARONE RANDOLPH,

                Plaintiff,

v.

ANDREW SAUL[1],
Acting Commissioner of Social Security,

                Defendant.

2:18-cv-00555-CLB

**ORDER**

      This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Sharone Randolph's ("Randolph") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the Court is Randolph's motion for reversal or remand. (ECF No. 15.) In this motion, Randolph seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response and cross-motion to affirm (ECF No. 23), and no reply was filed. Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), the Court concludes that the Commissioner's decision is supported by substantial evidence. Therefore, the Court denies Randolph's motion for reversal and/or remand, (ECF No. 15), and grants the Commissioner's cross-motion to affirm, (ECF No. 23).

**I.     STANDARDS OF REVIEW**

     A.     <u>Judicial Standard of Review</u>

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

(9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

2

//

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B. Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from

performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1  If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p.  In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in

accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

A.    Procedural History

Randolph applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on April 29, 2014 with an alleged disability onset date of April 9, 2013. (Administrative Record ("AR") 175-189.) The application was denied initially (AR 90-94), and on reconsideration. (AR 96-99.) Randolph subsequently requested an administrative hearing. (AR 104.)

//

On August 11, 2016, Randolph appeared, with counsel, at a hearing before ALJ Norman Bennett. (AR 36-57.) Ronald Hatakeyama, a vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on September 2, 2016, finding that Randolph had not been disabled at any time between the alleged onset date and the date of the decision. (AR 23-30.) Randolph appealed, and the Appeals Council denied review on January 25, 2018. (AR 1-7.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Randolph filed a complaint for judicial review on August 14, 2018. (ECF No. 1-1.)

B.  ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 23-30.) Ultimately, the ALJ disagreed that Randolph had been disabled from April 9, 2013, the alleged onset date, through the date of the ALJ's decision. (*Id.* at 29-30.) The ALJ held that, based on Randolph's RFC, age, education, and work experience, there were jobs in the national economy that she could perform. (*Id.* at 29.)

In making this determination, the ALJ started at step one. Here, the ALJ found Randolph had not engaged in substantial gainful activity from the alleged onset date of April 9, 2013. (*Id.* at 25.) At step two, the ALJ found Randolph had the following medically determinable impairments: degenerative disc disease of the cervical spine, hypertension, seizure disorder, headaches and bipolar disorder. (*Id.*) The ALJ found that these impairments constituted more than slight abnormalities and have had more than a minimal effect on Randolph's ability to perform basic work activities for a continuous period of 12 months. (*Id.*) At step three, the ALJ found Randolph did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.*)

//
//

Next, the ALJ determined Randolph had an RFC to do the following:

> lift and/or carry twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. She could occasionally climb ladders, ropes, scaffolds, ramps and stairs, balance, stoop, kneel, crouch and crawl. She needed to avoid work around heights or dangerous moving machinery, and was limited to simple, repetitive tasks.

(*Id.* at 26-28.)

The ALJ found the objective findings in this case failed to provide strong support for Randolph's allegations of disabling symptoms and limitations, and the medical findings did not support the existence of limitations greater than those included in the decision. (*Id.* at 27.) The record reflected significant gaps in her history of treatment, and despite her allegation of disability since April 2013, the record revealed no evidence of any treatment until May 2014, more than a year after the alleged onset date, with only three visits in 2014. (*Id.*) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Randolph's credibility. (*Id.* at 26-28.)

The ALJ then determined that Randolph was not able to perform past relevant work. (*Id.* at 28.) The VE, responding to a hypothetical indicating Randolph's RFC posed by the ALJ, compared the requirements of Randolph's PRW to her restrictions and found that Randolph was not capable of performing the PRW. (*Id.*) Further, the ALJ found that even if Randolph was not capable of performing any past relevant work, there are other jobs that exist in significant numbers in the national economy that she is also able to perform. (*Id.* at 29.) Thus, proceeding to step five, and relying on the testimony of the VE, the ALJ determined that Randolph's age, education, work experience, and RFC would allow her to perform occupations existing in significant numbers in the national economy, such as: office helper, assembler, and sales attendant. (*Id.*) Accordingly, the ALJ held that Randolph had not been under a disability from April 9, 2013, the alleged onset date, through September 2, 2016, the date of the ALJ's decision, and denied her DIB and SSI claim. (*Id.* at 29-30.)

7

**III.     ISSUES**

Randolph seeks judicial review of the Commissioner's final decision denying her DIB and SSI under Titles II and XVI of the Social Security Act. (ECF No. 15.) Randolph raises the following issues for this Court's review:

1. Whether the ALJ properly rejected the opinion of Randolph's treating Advance Practice Registered Nurse ("APN"); and,

2. Whether the ALJ properly rejected Randolph's testimony regarding pain, symptoms, and level of limitation.

**IV.     DISCUSSION**

    A.     <u>Opinion of Judith Larkin, APN</u>

Randolph argues the ALJ improperly rejected the opinion of her treating APN, Judith Larkin ("Larkin") by failing to specifically explain any of the regulatory factors used to evaluate the opinions of acceptable medical sources, even though an APN is not generally considered to be an acceptable medical source. (ECF No. 15 at 5, 7.) Randolph also states that the ALJ failed to specifically explain how Larkin's opinion was unsupported by the record because the ALJ's opinion did not articulate a single, specific and germane reason for rejecting her opinion. (*Id.* at 8.)

There are three types of medical opinions (treating, examining, and non-examining) and each type is accorded different weight. *See Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater,* 81 F.2d 821, 830-31 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014; *Turner v. Comm'r of Soc. Sec. Admin.,* 613 F.3d 1217, 1222 (9th Cir. 2010); *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987). Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess claimants' problems. *See Fubrey v. Bowen,* 849 F.2d 418, 421-22 (9th Cir. 1988); *Winans,* 853 F.2d at 647; *see also Bray v. Comm'r of*

8

*Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'"). "The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison,* 759 F.3d at 1012.

"[A]n [ALJ] may disregard medical opinion that is brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin,* 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam); *see also Burrell v. Colvin,* 775 F.3d 1133, 1140 (9th Cir. 2014). However, "only licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)). Nurse practitioners and physician assistants are not considered acceptable medical sources and are instead defined as "other sources" that are not entitled to the same deference as acceptable medical sources. *See Dale v. Colvin,* 823 F.3d 941, 943 (9th Cir. 2016); *Britton,* 787 F.3d at 1013; *Molina,* 674 F.3d at 1104. "An ALJ may discount the opinion of an 'other source,' such as a nurse practitioner, if she provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill,* 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted).

> Under certain circumstances, the opinion of a treating provider who is not an acceptable medical source may be given greater weight than the opinion of a treating provider who is—for example, when the provider 'has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.'

*Revels v. Berryhill,* 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1)).

"If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014) (internal quotation marks omitted).

9

Here, the bulk of the administrative record consists primarily of Randolph's own subjective statements as to her condition (AR 209, 219, 229-33, 234-41, 244-51) and the progress notes of Larkin, an APN who works for Desert Neurology with neurologist, Dr. Venkat Veerappan. (AR 313-15, 316-18, 319-21, 353-55, 359-61, 362-64, 365-66, 368-69, 393-95, 396-98.) In this case, the ALJ assigned little weight to Larkin's opinion as to Randolph's RFC because Larkin was not an acceptable medical source as defined by 20 C.F.R. §§ 404.1513(a) and 416.913(a) and the record as a whole did not support Larkin's statement that Randolph's impairments were so severe as to be disabling. (AR 28.) Specifically, the ALJ noted that the RFC assessment by Larkin found in August 2016 that Randolph could lift and/or carry five to ten pounds, she needed frequent rest with standing, and could sit for two hours. (*Id.*; *see also* AR 387-92.) Randolph could frequently reach up above her shoulders, reach down to waist level and towards floor, carefully handle objects, and handle with fingers. (*Id.*) Randolph would have difficulty with bending, squatting, kneeling and turning any parts of the body and would be unable to continue or resume work at current or previous employment. (*Id.*) Larkin also found that Randolph's disability was not likely to change and that she would not be returning to work. (*Id.*) The two primary complaints addressed by Larkin in the RFC related to Randolph's headaches and neck pain. (AR 387, 389, 391.) The ALJ properly noted that although Randolph received treatment for the allegedly disabling headaches, that treatment was routine and conservative in nature, consisting of medication and Randolph was consistently in no acute distress, with intact sensation and normal cerebellar testing. (AR 27.) An MRI of Randolph's brain in January 2015 was also normal. (*Id.*; AR 324.)

Likewise, the ALJ found that although Randolph's June 2015 MRI of her cervical spine revealed moderately narrowed AP dimension of the entire cervical canal, minimal disc bulges at C4-C5 and C5-C6, the record revealed Randolph failed to mention her allegedly disabling neck pain on multiple occasions. (AR 27.) The ALJ stated that treatment notes also revealed normal musculoskeletal examination, with normal bulk, tone and strength throughout, and did not otherwise reveal any significant findings that would

10

support Randolph's allegation of disabling neck pain. (*Id.*) For the reasons stated below, the Court finds that the ALJ's findings are supported by substantial evidence in the record.

Randolph's first visit to Desert Neurology was on November 20, 2014, upon referral from Dr. Barolone for her headaches. (AR 297-99). Randolph complained of having headaches off and on since 2002, about three times per day, and claimed to have been diagnosed with cluster headaches. (AR 297.) Randolph asserted she would sometimes not have a headache for one to two months at a time, but then they would come back. (*Id.*) Randolph's headaches were mainly on the right side of her head, and she was sensitive to sound and has visual aura and some nausea, but no vomiting or dizziness. (*Id.*) The doctor reviewed Randolph's symptoms and found she was negative for loss of consciousness, confusion, speech abnormalities, weakness, paresthesias, visual or hearing or taste changes, convulsions, tremors, bowel/bladder incontinence, neck/back pain, or imbalance/incoordination. (*Id.*) Randolph made no mention of neck pain during this initial visit. (*Id.*)

During the physical examination the doctor noted that although Randolph complained of having a headache "right now," she was in no acute distress, awake, alert and oriented, and her speech, cognition, mood and affect were all within normal limits, as were her sense of smell, taste and hearing, and her cerebellar examination. (AR 297-98.) Additionally, the doctor noted that Randolph's head/neck rotation and shoulder shrugging was intact, with normal bulk, tone and strength throughout. (AR 298.) The doctor's assessment of Randolph's conditions included migraine with aura and cluster headaches and other trigeminal autonomic cephalgias. (*Id.*) The doctor ordered a brain MRI without contrast and prescribed Fioricet and Verapamil. (*Id.*)

Randolph's second visit to Desert Neurology occurred on January 14, 2015. (AR 370-71.) Randolph reported no changes in her daily headaches and that she had stopped taking the Verapamil because "it does not make her feel well"; nor did she indicate having any type of neck pain. (*Id.*) She continued on the Floricet and benefitted from the medication. (*Id.*) The physical examination notes were normal, and essentially the same

as the November 2014 visit. (AR 370-71.) The MRI of Randolph's brain as of January 28, 2015 was also normal. (AR 324.)

Randolph began seeing Larkin, APN, on February 17, 2015, following the completion of the brain MRI. (AR 368-69.) Randolph stated that she continued to have her migraines and that lately they had been severe after it hits, lasting for 55 minutes long. (AR 368.) Again, Randolph made no mention of neck pain during this visit. (*Id.*) Larkin's physical examination notes stated that, again, Randolph was not in acute distress and her overall examination was completely normal, as was the musculoskeletal examination, with a normal bulk, tone and strength throughout. (AR 368-69.) Larkin added "tension type headache" to her assessment of Randolph's conditions and prescribed Norco 5 mg for headaches. (AR 369.) Randolph saw Larkin eight times from February 2015 through August 2016. (AR 362-64, 359-361, 319-321, 313-15, 322-23, 353-55, 396-98, 393-95.) At each visit Randolph's primary complaint was related to head pain/headaches, but not neck pain. (*See id.*) Larkin's physical examination notes consistently stated Randolph was not in acute distress and her overall examinations were normal, as were her musculoskeletal examinations, with a normal bulk, tone, and strength throughout. (*Id.*) Further, aside from one occasion, Randolph's medications remained unchanged throughout her treatment with Larkin. (*Id.*)

As Randolph acknowledges, Larkin was not an acceptable medical source. (ECF No. 15 at 6-7.) As such, the ALJ need only provide germane reasons for rejecting Larkin's opinion. *See* 20 C.F.R. § 404.1513(a) ("acceptable medical sources include licensed physicians and psychologists); 20 C.F.R. § 404.1513(d)(1) (nurse practitioners are "other sources"). As the Commissioner correctly states, the ALJ properly afforded little weight to Larkin's opinion because she was not an acceptable medical source and the record as a whole did not support the severe limitations assessed by Larkin. (AR 28). None of Larkin's treatment records indicate any sort of total disability from either Randolph's headaches or alleged neck pain. While Larkin indicated that Randolph would need frequent rest periods, no explanation or support for her assessment is provided and the limitation is not evident

12

from Randolph's normal physical examination findings. (ECF No. 23 at 5.) Additionally, the ALJ stated that Larkin's recommended limitation to sedentary exertional capacity was not supported by her treatment notes, which revealed normal musculoskeletal examination with normal bulk, tone, and strength throughout. (AR 27.) Accordingly, the Court finds that the ALJ provided germane reasons for assigning little weight to Larkin's opinion.

B.   Adverse Credibility Finding

Randolph argues the ALJ improperly rejected Randolph's testimony concerning pain, symptom and level of limitation due to significant gaps in her treatment history and her routine and conservative treatment. (ECF No. 15 at 8-12.) An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154m 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and, (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Randolph alleged disability due to degenerative disk disease of the cervical spine, hypertension, seizure disorder, headaches, and bipolar disorder. (*Id.* at 26-27; *see also* AR 209, 234-41.) She alleged that she stopped working in April 2013 due to her condition, complaining of daily headaches, sometimes two to three times a day. (*Id.*) Randolph claimed that she had difficulty with personal care, did not prepare meals, perform household chores, or spend time with others. (*Id.*) She alleged difficulty with lifting, standing, reaching, walking, sitting, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions and getting along with others. (*Id.*) She also stated that she could pay attention for less than thirty minutes and did not finish what she started. (*Id.*)

As explained above, the ALJ correctly pointed out that Randolph's normal objective and medical findings did not support such extreme limitations. (AR 27.) *See also Morgan v. Comm'r of Soc. Sec.,* 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between [the claimant's] testimony of subjective complaints and the objective medical evidence in the record, the ALJ provided specific and substantial reasons that undermined [the claimant's] credibility.") Here, the ALJ relied on objective medical evidence supporting the RFC rather than Randolph's allegations of pain. Although the ALJ cannot cherry pick objective medical evidence from the record, they can consider contrary objective medical evidence in making a credibility determination. In this case, the ALJ provided a thorough

14

summary of the medical evidence for each medically determinable condition in which she highlighted specific objective findings that support the assigned RFC. (AR 27.)

Randolph acknowledges that the medical record does not contain records between April 2013 and May 2014 but argues that the ALJ elicited no explanation for the purported gap in treatment. The ALJ stated that the record reflected significant gaps in her treatment history, and that despite her allegation of disability since April 2013, the record revealed no evidence of any treatment until May 2014, more than a year after the alleged onset date, with only three visits in 2014. (*Id.*) There was no basis to further develop the record as to any gap in treatment, as the record was neither ambiguous nor inadequate. (ECF No. 23 at 7.) *See Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). Further, at the end of the hearing, the ALJ specifically asked Randolph's counsel if the record was complete, to which the attorney responded, yes, except if the results of the 72-hour EEG were received before the ALJ reached a decision. (AR 56.) Therefore, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.

The ALJ also discussed Randolph's overall routine and conservative treatment, consisting of medication. (AR 27.) *See* 20 C.F.R. § 404.1529(c)(3)(iv); SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints… we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); *see also Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995) (finding conservative course of treatment suggested a "lower level of both pain and functional limitation."). Randolph was later recommended for Botox treatment, but had previously stated that Advil, Aleve, Ibuprofen, and coffee relieved her symptoms sometimes. (ECF No. 23 at 8; *see also* AR 209, 421.) Further, Randolph's prior evaluations only included medication for treatment, for which Larkin only increased the dosage one time. (AR 397.)

1 Additionally, when the prescribed medication did not work, Randolph drank coffee to alleviate her headaches (AR 49); she did not require additional testing, nor did she participate in a headache study despite her ongoing allegations of daily headaches. (ECF No. 23 at 8.) The ALJ correctly found Randolph's treatment was routine and conservative.

Moreover, the ALJ's considered the Disability Determination Services medical consultants, whose findings were afforded little weight as the opinions of non-examining experts. (AR 27.) Specifically, in July 2014, Dr. Toth, the initial examiner, found that there were no medically determinable physical impairments. (*Id.*, *see also* AR 58-63.) Likewise, on reconsideration, Dr. William Dougan found in January 2015 that the claimant's impairments were non-severe. (*Id.* at 27-28; *see also* AR 74-81.) However, the ALJ did find that the record supported a finding of limitations greater than those found by the non-examining experts. (*Id.* at 28.) Thus, the ALJ did not wholly discount Randolph's testimony, but instead assessed an RFC that was consistent with the record as a whole.

Based on the above, the Court finds the ALJ provided "specific, clear and convincing" reasons supported by substantial evidence for discounting Randolph's credibility as to her subjective limitations.

## V. CONCLUSION

Having reviewed the Administrative Record as a whole and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ and Appeals Council's decision was supported by substantial evidence. Therefore, the Court denies Randolph's motion to remand (ECF No. 15) and grants the Commissioner's cross-motion to affirm (ECF No. 23).

## VI. ORDER

**IT IS THEREFORE ORDERED** that Randolph's motion for remand (ECF No. 15) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 23) is **GRANTED**; and

16

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**:  January 31, 2020

_____
**UNITED STATES MAGISTRATE JUDGE**